02D02-1808-PL-000288
Allen Superior Court 2

Filed: 8/20/2018 8:57 AM
Clerk
Allen County, Indiana
JA

# INDIANA COMMERCIAL COURT

STATE OF INDIANA )   IN THE ALLEN SUPERIOR COURT
) SS:
COUNTY OF ALLEN )   CAUSE NO: _____

WENDT, LLP, )
Successor in Interest to )
JOHN WENDT & SONS )
)
        Plaintiff, )
v. )
)
PRUDENTIAL INSURANCE )
COMPANY OF AMERICA )
and GEORGE R. DYE )
)
        Defendants. )

## COMPLAINT

Plaintiff Wendt, LLP, Successor in Interest to John Wendt & Sons, by counsel, for its Complaint against Prudential Insurance Company and George R. Dye, alleges and states as follows:

## PARTIES

1.      Plaintiff Wendt, LLP, Successor in Interest to John Wendt & Sons ("Wendt") is a limited liability partnership with a principal place of business in Wabash County, Indiana.

2.      Upon information and belief, Defendant Prudential Insurance Company of America ("Prudential") is a New Jersey corporation with its principal of business in the State of New Jersey.

3.     Upon information and belief, Defendant George R. Dye ("Mr. Dye") is a resident of Sumter County, Florida.

4.     At all relevant times, Mr. Dye owned and operated Dye Insurance Agency ("Dye Insurance") located in Huntington County, Indiana.

5.     Pursuant to Interim Commercial Court Rule 2(E), this Commercial Court has jurisdiction over this matter because the relevant contract was entered into in Indiana.

## FACTS UNDERLYING ALL CLAIMS

6.     Jere A. Wendt was born on November 2, 1941.

7.     Upon information and belief, Mr. Dye knew prior to October of 1982 that Mr. Wendt's actual birth date was November 2, 1941.

8.     In October of 1982, Mr. Wendt purchased a $100,000.00 life insurance policy (the "Policy") with Prudential through Dye Insurance.  Mr. Wendt named John Wendt & Sons the beneficiary under the Policy.  A true and accurate copy of the Policy is attached to this Complaint as Exhibit A.

9.     Wendt is the Successor in Interest to John Wendt & Sons.

10.     An application (the "Application") was a required part of the process to obtain the Policy.  The Policy incorporates the Application.  Upon information and belief, Mr. Dye prepared the Application.

11.     The Policy, through incorporation of the Application, represents Mr. Wendt's date of birth as May 18, 1943, instead of November 2, 1941.

12.     On January 7, 1983, a request (the "Request") was made to change the Policy from economatic whole life to special whole life. A true and accurate copy of the Request is attached to this Complaint as Exhibit B.

13.     Upon information and belief, the Request form was prepared by Mr. Dye. This Request form once again represents Mr. Wendt's date of birth as May 18, 1943.

14.     On February 28, 2014, Prudential sent Mr. Wendt a valuation of the Policy ("Policy Valuation"), which represented the following: "Term insurance is being provided under the Extended Insurance benefit described in your policy, and will continue through May 19, 2017." A true and accurate copy of the Policy Valuation is attached to this Complaint as Exhibit C.

15.     Mr. Wendt passed away on August 27, 2016.

16.     Following Mr. Wendt's passing, Wendt requested the life insurance proceeds due under the Policy.

17.     On October 25, 2016, Wendt received a letter (the "Denial Letter") from Prudential that denied paying out the death benefits to Wendt under the Policy due to the date of birth represented in the Policy. This denial was premised on a calculation using a formula that Prudential refused to disclose to Wendt.  A

true and accurate copy of the Denial Letter is attached to this Complaint as Exhibit D.

18.    Mr. Dye held himself out to be a professional in the area of insurance in relation to the Policy purchased by Mr. Wendt.

19.    Mr. Wendt, and Wendt, relied on Mr. Dye as a professional to insure that the Policy was properly completed and valid and that in the event of Mr. Wendt's death, the death benefits would be provided to the beneficiary named in the Policy.

20.    As a professional retained by Mr. Wendt for the purpose of purchasing the Policy, Mr. Dye owed Mr. Wendt and Wendt a duty to exercise the ordinary knowledge and skill expected of a professional experienced in insurance and to ensure the Policy forms were properly completed and valid.

21.    To the extent Prudential knew of Mr. Wendt's correct date of birth, it wrongly denied paying out the Policy benefits to Wendt.

22.    To the extent Prudential miscalculated the policy extension date or used a bad or unfair formula for purposes of making such calculation, it wrongly denied paying out the Policy benefits to Wendt.

**COUNT I - BREACH OF CONTRACT VERSUS PRUDENTIAL**

23.    Wendt incorporates the allegations of Paragraphs 1 through 22 of this Complaint as if fully restated in this paragraph.

24.     As more fully described above, Prudential breached its agreement by refusing to pay out death benefits to the Policy beneficiary, Wendt.

25.     As a direct and proximate result, Wendt has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Wendt, LLP, Successor in Interest to John Wendt & Sons, by counsel, respectfully requests that this Court enter judgment against Prudential, for all damages relating to this claim, attorney's fees, costs, and all other relief just and proper.

### COUNT II – NEGLIGENCE VERSUS PRUDENTIAL

26.     Wendt incorporates the allegations of Paragraphs 1 through 25 of this Complaint as if fully restated in this paragraph.

27.     Prudential owed Wendt a duty to exercise reasonable care in managing and paying out the Policy benefits following the death of Mr. Wendt.

28.     Prudential breached its duty to Wendt.

29.     As a direct and proximate result of Prudential's actions, Wendt has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Wendt, LLP, Successor in Interest to John Wendt & Sons, by counsel, respectfully requests that this Court enter judgment against Prudential, for all damages relating to this claim, attorney's fees, costs, and all other relief just and proper.

## <u>COUNT III – EQUITABLE ESTOPPEL VERSUS PRUDENTIAL</u>

30.   Wendt incorporates the allegations of Paragraphs 1 through 29 of this Complaint as if fully restated in this paragraph.

31.   On February 28, 2014, Prudential represented to Mr. Wendt in the Policy Valuation that coverage under the Policy would continue through May 19, 2017.

32.   Prudential knew such misrepresentations were false when made, or recklessly made such misrepresentations without knowledge of their truth or falsity.

33.   Mr. Wendt and Wendt did not know that Prudential's misrepresentations were false.

34.   Prudential made these misrepresentations with the purpose of inducing action or inaction with regard to the payment of premiums on the Policy.

35.   Mr. Wendt and Wendt reasonably relied on Prudential's misrepresentations.

36.   As a direct and proximate result, Wendt has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Wendt, LLP, Successor in Interest to John Wendt & Sons, by counsel, respectfully requests that this Court enter judgment against

Prudential, for all damages relating to this claim, attorney's fees, costs, and all other relief just and proper.

### COUNT IV– PROFESSIONAL NEGLIGENCE VERSUS GEORGE DYE

37.    Wendt incorporates the allegations of Paragraphs 1 through 36 of this Complaint as if fully restated in this paragraph.

38.    As more fully described above, Mr. Dye breached his professional duty to Mr. Wendt and Wendt by failing to exercise ordinary skill and knowledge that would be expected of a professional that was experienced in providing insurance services.

39.    As a direct and proximate result, Wendt has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Wendt, LLP, Successor in Interest to John Wendt & Sons, by counsel, respectfully requests that this Court enter judgment against Mr. Dye, for all damages relating to this claim, attorney's fees, costs, and all other relief just and proper.

**BECKMAN LAWSON, LLP**

By:    /s/ *Craig R. Patterson*
Craig R. Patterson, #18104-02
Taylor Beaty, #32508-17
201 W. Wayne Street
Fort Wayne, IN 46802
Telephone: (260) 422-0800
ATTORNEYS FOR PLAINTIFF

Page 7 of 7

USDC IN/ND case 1:18-cv-00311-TLS-SLC document 5 filed 08/20/18 page 8 of 33

02D02-1808-PL-000288

Filed 08/20/2018 8:57 AM
Clerk
Allen County, Indiana
JA

Allen Superior Court 2



The Prudential Insurance Company of America
a mutual life insurance company
Corporate Office, Newark, New Jersey

| | | | |
|---|---|---|---|
| **Insured** | JERE A WENDT | 74 203 734 | **Policy Number** |
| **Face Amount** | $100,000-- | NOV 11, 1932 | **Contract Date** |
| **Premium Period** | LIFE | | |
| **Agency** | MUNC-IBE | | |

We will pay the beneficiary the proceeds of this contract promptly if we receive due proof that the Insured died. We make this promise subject to all the provisions of the contract.

Please read this contract with care. A guide to its contents is on the last page. A summary is on page 2. If there is ever a question about it, or if there is a claim, just see a Prudential agent or get in touch with one of our offices.

**Right to Cancel Contract.**—Not later than ten days after you get this contract, you may return it to us. All you have to do is take it or mail it to one of our offices or to the agent who sold it to you. We will cancel the contract from the start and give back your money promptly.

Signed for Prudential.

*Isabelle L. Kirchner*
Secretary

*[signature]*
President

Whole Life Policy. Insurance payable only upon death. Premiums payable throughout Insured's lifetime. Supplementary Benefits, if any, as listed on Contract Data page(s). Eligible for annual dividends as stated in Dividends provision.

EL—82

CHANGE INSERTED IN ¤24 OF APPLICATION
SEE PHOTOSTAT ATTACHED

EXHIBIT A

## CONTRACT SUMMARY

We offer this summary to help you understand this contract. We do not intend that it change any of the provisions of the contract.

This is a contract of life insurance. Premiums are to be paid throughout the Insured's lifetime. If a premium is not paid before its days of grace are over, the contract may end or it may stay in force with reduced benefits.. If either occurs, you may be able to reinstate its full benefits.

Proceeds is a word we use to mean the amount we would pay if we were to settle the contract in one sum. To compute the proceeds which may arise from the Insured's death, we start with a basic amount. We may adjust that amount if there are loans, dividend credits, premium in default. or a premium paid (but not waived under a waiver of premium benefit, if any) past the date of death. The table on page 15 tells what the basic amount is. The amount depends on how the contract is in force. The table will refer you to the parts of the contract which tell you how we adjust the basic amount. If you surrender the contract, the proceeds will be the net cash value. We describe it under Cash Value Option on page 9.

Proceeds often are not taken in one sum. For instance, on surrender, you may be able to put proceeds under a settlement option to provide retirement income or for some other purpose. Also, for all or part of the proceeds which arise from the Insured's death, you may be able to choose a manner of payment to fit the beneficiary's expected needs. If the Insured dies, and one has not been chosen, the beneficiary may be able to do so. We will pay interest under Option 3 from the date of death on any proceeds to which no other manner of payment applies. This will be automatic as we state on page 14. There is no need to ask for it.

You and we may agree on a change in the ownership of this contract. Also, unless we endorse it to say otherwise, the contract gives you these rights, among others:

* You may change the beneficiary under it.
* You may obtain any dividend credits under it.
* You may borrow on it up to its loan value.
* You may surrender it for its cash value.

The contract, as issued, may or may not have extra benefits which we call Supplementary Benefits. If it does, we list them under Supplementary Benefits on the Contract Data page(s) and describe them after page 14. The contract may or may not have other extra benefits. If it does, we add them by rider. Any extra benefit ends as soon as any premium is in default past its days of grace, unless the form which describes it states otherwise.

*(Contract Summary Continued on Page 15)*

Page 2 (1...79)

INSUREDS SEX AGE ...

RATING CLASS ...

ISSUE OF ... NEW LIFE A KIND

NEW 11. 1982

PREMIUM PAYING
AGENCY

FACE AMOUNT          4,000,000.--

BENEFICIARY          SEE BENEFICIARY PROVISION ATTACHED.

LIST OF SUPPLEMENTARY BENEFITS
(EACH BENEFIT IS DESCRIBED IN THE FORM
WHICH BEARS THE NUMBER SHOWN FOR IT)

INSURED'S WAIVER OF PREMIUM BENEFIT.
****** END OF LIST ******

SCHEDULE OF PREMIUMS

THE DATES OF CONTRACT PREMIUMS OCCUR ON THE CONTRACT DATE AND AT INTERVALS
OF 1 MONTH AFTER THAT DATE.

CONTRACT PREMIUMS ARE                        8,163.65 EACH
  C 0ANGING ON NOV 11, 2008 TO              4,143.65 EACH

CONTRACT PREMIUMS INCLUDE THE PREMIUMS FOR BENEFIT FORMS.
  ****** END OF SCHEDULE ******

| END OF CONTRACT YEAR | CASH (OR LOAN) VALUE | REDUCED PAID-UP INSURANCE | EXTENDED INSURANCE YEARS | DAYS |
|---|---|---|---|---|
| 1 | 0.00 | 0.00 | 0 | 0 |
| 2 | 0.00 | 0.00 | 0 | 0 |
| 3 | 0.00 | 0.00 | 0 | 0 |
| 4 | 0.00 | 0.00 | 0 | 0 |
| 5 | 5,124.00 | 12,825.00 | 8 | 7 |
| 6 | 4,625.00 | 17,428.00 | 5 | 148 |
| 7 | 4,350.00 | 21,903.00 | 7 | 198 |
| 8 | 7,825.00 | 25,109.00 | 6 | 377 |
| 9 | 9,404.00 | 30,104.00 | 8 | 95 |
| 10 | 11,050.00 | 33,803.00 | 8 | 327 |
| 11 | 12,433.00 | 37,498.00 | 11 | 148 |
| 12 | 14,304.00 | 40,915.00 | 11 | 205 |
| 13 | 14,813.00 | 44,157.00 | 11 | 53 |
| 14 | 17,200.00 | 47,227.00 | 11 | 144 |
| 15 | 19,525.00 | 50,154.00 | 11 | 244 |
| 16 | 21,343.00 | 52,821.00 | 11 | 250 |
| 17 | 22,771.00 | 55,365.00 | 11 | 227 |
| 18 | 25,045.00 | 57,843.00 | 11 | 245 |
| 19 | 24,927.00 | 60,039.00 | 11 | 227 |
| 20 | 26,883.00 | 62,625.00 | 11 | 257 |
| ATTAINED AGE |  |  |  |  |
| 60 | 26,870.00 | 64,484.00 | 10 | 149 |
| 62 | 30,725.00 | 68,722.00 | 10 | 145 |
| 65 | 40,054.00 | 73,861.00 | 9 | 341 |

THERE MAY BE EXTRA DAYS OF TERM INSURANCE. WE EXPLAIN THIS UNDER THE EXTENDED INSURANCE PROVISION.

## GENERAL PROVISIONS

**Definitions.**—We define here some of the words and phrases used all through this contract. We explain others, not defined here, in other parts of the text.

**We, Our and Us.**—Prudential.

**You and Your.**—The owner of the contract.

**Insured.**—The person whose name is in the window of the first page. He or she need not be the owner.

Example: *Suppose we issue a contract on the life of your spouse. You applied for it and named no one else as owner. Your spouse is the Insured and you are the owner.*

**Issue Date.**—The contract date.

**Anniversary or Contract Anniversary.**—The same day and month as the contract date in each later year.

Example: *If the contract date is March 9, 1980, the first anniversary is March 9, 1981. The second is March 9, 1982, and so on.*

**Contract Year.**—A year which starts on the contract date or on an anniversary.

Example: *If the contract date is March 9, 1980, the first contract year starts then and ends on March 8, 1981. The second starts on March 9, 1981 and ends on March 8, 1982, and so on.*

**Attained Age.**—The Insured's attained age at any time is

the issue age plus the length of time since the contract date. You will find the issue age near the top of page 3.

**The Contract.**—This policy and the application, a copy of which is attached, form the whole contract. We assume that all statements in the application were made to the best of the knowledge and belief of the person(s) who made them; in the absence of fraud they are deemed to be representations and not warranties. We relied on those statements when we issued the contract. We will not use any statement, unless made in the application, to void the contract or to deny a claim.

**Contract Modifications.**—Only a Prudential officer may agree to modify this contract, and then only in writing.

**Ownership and Control.**—Unless we endorse this contract to say otherwise: (1) the owner of the contract is the Insured; and (2) while the Insured is living the owner alone is entitled to (a) any contract benefit and value, and (b) the exercise of any right and privilege granted by the contract or by us.

**Suicide Exclusion.**—If the Insured, whether sane or insane, dies by suicide within two years from the issue date, we will pay no more than the sum of the premiums paid.

**Currency.**—Any money we pay, or which is paid to us, must be in United States currency. Any amount we owe will be payable at our Corporate Office.

(Continued on Next Page)

## ENDORSEMENTS

The policy has been changed in accordance with proper written request(s) on file with the Company.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date     By

FEB 22 1983

SECRETARY

## GENERAL PROVISIONS (Continued)

**Misstatement of Age or Sex.**—If the Insured's stated age or sex or both are not correct, we will change each benefit and any amount to be paid to that which the premium would have bought for the correct age and sex.

The Schedule of Premiums may show that premiums change or stop on a certain date. We may have used that date because the Insured would attain a certain age on that date. If we find that the issue age was wrong, we will correct that date.

**Incontestability.**—Except for non-payment of premium, we will not contest this contract after it has been in force during the Insured's lifetime for two years from the issue date.

**Assignment.**—We will not be deemed to know of an assignment unless we receive it, or a copy of it, at our Home Office. We are not obliged to see that an assignment is valid or sufficient.

**Loan Interest Rates.**—The loan interest rate we refer to under Loans is 8% a year. But for contract debt restored or paid back. If the contract is reinstated, the rate is less. In that case, it is 6% a year for the period from the due date of the premium in default to the date of reinstatement and 8% a year for any other period.

We may set a lower rate or rates for any period during which there is contract debt.

**Changes in Plan.**—You may be able to have this contract changed to another plan of life insurance. But any change may be made only if we consent, and will be subject to conditions and charges which we then determine.

## BENEFICIARY

3. Two or more in the same class who have the right to be paid will be paid in equal shares.

4. If none survives the Insured, we will pay in one sum to the Insured's estate.

*Example: Suppose the class 1 beneficiary is Jane and the class 2 beneficiaries are Paul and John. We owe Jane the proceeds if she is living at the Insured's death. We owe Paul and John the proceeds if they are living then but Jane is not. But if only one of them is living, we owe him the proceeds. If none of them is living, we owe the Insured's estate.*

Beneficiaries who do not have a right to be paid under these terms may still have a right to be paid under the Automatic Mode of Settlement.

Before we make a payment, we have the right to decide what proof we need of the identity, age or any other facts about any persons designated as beneficiaries. If beneficiaries are not designated by name and we make payment(s) based on that proof, we will not have to make the payment(s) again.

You may designate or change a beneficiary. Your request must be in writing and in a form which meets our needs. It will take effect only when we file it at our Home Office; this will be after you send the contract to us to be endorsed, if we ask you to do so. Then any previous beneficiary's interest will end as of the date of the request. It will end then even if the Insured is not living when we file the request. Any beneficiary's interest is subject to the rights of any assignee of whom we know.

When a beneficiary is designated, any relationship shown is to the Insured, unless otherwise stated. To show priority, we may use numbered classes, so that the class with first priority is called class 1, the class with next priority is called class 2, and so on. When we use numbered classes, these statements apply to beneficiaries unless the form states otherwise:

1. One who survives the Insured will have the right to be paid only if no one in a prior class survives the Insured.

2. One who has the right to be paid will be the only one paid if no one else in the same class survives the Insured.

PREMIUM PAYMENT AND REINSTATE...

Printed in U.S.A.

# PREMIUM PAYMENT AND REINSTATEMENT

**Payment of Premiums.**—The Schedule of Premiums shows the amounts of the premiums and how often they must be paid. We tell you below how you may be able to have them fall due either more or less often. Due dates fall on the same day of the month as the contract date. They occur only while the Insured is living. The premium period, shown in the window of the first page, starts on the contract date. Each premium is to be paid by its due date. It may be paid at our Home Office or to any of our authorized agents. If we are asked to do so, we will give a signed receipt. A premium is in default if it is not paid when it is due.

**Change of Frequency.**—You may ask us in writing to have premiums fall due either more or less often. If we agree, we will make the change and tell you what the new premiums are and when they are due. The more often premiums are due, the larger the total amount that will have to be paid for a contract year.

**Grace Period.**—We grant 31 days of grace for paying each premium except the first one. If a premium has not been paid by its due date, the contract will stay in force during its days of grace. If a premium has not been paid when its days of grace are over, the contract will end and have no value, except as we state under Contract Value Options.

**Premium Adjustment.**—The Insured might die while no premium is in default. If so, we will make an adjustment so that the proceeds will include that part of the last premium paid which is more than that which was needed to pay premiums through the date of death. Or the Insured might die in the days of grace of a premium in default. If so, the amount needed to pay premiums through the date of death is due us. We will make an adjustment so that the proceeds will not include that amount.

Example: *Suppose the contract date is 1980, and an annual premium of $400 due in 1982 is paid. The Insured dies nine months later. The proceeds will include about $100 from the premium, since $300 was enough to pay premiums through the date of death. The proceeds could include slightly more or less than $100, since some months have more days than others.*

This contract might have an extra benefit which insures someone other than the Insured. And there might be a claim under that benefit while the Insured is living and in the days of grace of a premium in default. In this case, we will subtract any premium in default when we settle the claim.

**Reinstatement.**—You may reinstate this contract after the days of grace of a premium in default. All these conditions must be met:

1. Premium payment must not be in default more than three years.

2. You must not have surrendered the contract to us for its cash value.

3. You must give us any facts we need to satisfy us that the Insured is insurable for the contract.

4. We must be paid all premiums in arrears with compound interest at 6% a year. We may set a lower rate for any period in which there are arrears.

5. Any contract debt must be restored or paid back with interest to date at the rate or rates which we state for reinstatement under Loan Interest Rates. If that debt with interest would exceed the loan value of the reinstated contract, the excess must be paid to us before reinstatement.

Example: *Suppose a premium due May 1st is not paid on time. The contract will stay in force until June 1st whether the premium is paid or not. If the premium is not paid by June 1st, you must meet all the above conditions if you want to reinstate the contract.*

# DIVIDENDS

**Participation.**—We will decide each year what part of our surplus, if any, to credit to this contract as a dividend. The contract will be eligible for such a dividend if (1) the Insured is living; (2) the contract is in force other than as extended insurance; and (3) all premiums due before the anniversary have been paid unless the contract is in force as reduced paid-up insurance.

We will credit any such dividend on the anniversary. But we do not expect to credit one before the fifth anniversary.

**Dividend Options.**—If the contract is in force as reduced paid-up insurance, we will credit any such dividend as an addition (which we define in 3 below). In other cases, if you ask us in writing at our Home Office and in a form which meets our needs, you may choose any of these uses for any such dividend:

1. Cash.—We will pay it to you in cash.

2. Premium Reduction.—We will use it to reduce any premium then due.

3. Addition.—We will use it at the net single premium rate at the Insured's attained age to provide an addition, which is paid-up life insurance on the Insured's life.

Example. *Suppose we credit a dividend of $10 to the contract on an anniversary. Suppose it will provide an addition in the amount of $17. The amount of this addition is surrendered. Its net value is that which we will pay if the addition is surrendered. The net value, which starts at $10, will increase with time if it is not reduced by contract debt.*

4. Accumulation.—We will hold it at interest. The rate will be at least 3% a year. We may use a higher rate.

If you have not made another choice by 31 days after the anniversary, we will use the dividend as we state in 3 above. But if a premium is in default at the end of its last day of grace, we will use the dividend as we state under Contract Value Options.

**Dividend Credits Described.**—The phrase dividend credits means the total of (1) any dividends and interest we hold under 4 above; (2) either the amount or value, as we explain below, of any additions under 3 above; and (3) any other dividends we have credited to the contract but have not yet used or paid. It includes the amount of any of those additions when we refer to the amount which arise from the Insured's death. It includes the net value of any of those additions when we refer to the net cash values, or the proceeds which arise on surrender. The surrender value of those additions will never be less than the dividends we used to provide them.

**Surrender of Dividends.**—You may surrender any dividend credits for their net value if (1) we have not included them in the net cash value used to provide extended or reduced paid-up insurance; (2) we do not need them as security for contract debt; and (3) we have your request in writing at our Home Office and in a form which meets our needs.

**Settlement.**—We will include any dividend credits in the proceeds when we settle the contract.

# CONTRACT VALUE OPTIONS
## (NON-FORFEITURE BENEFITS ARE DESCRIBED HERE)

**Benefit After the Grace Period.**—After the days of grace of a premium in default, we will use any net cash value (which we describe under Cash Value Option) to keep the contract in force as one of two kinds of insurance. One kind is extended insurance. The other is reduced paid-up insurance. We describe both below. You will find under Automatic Benefit which kind it will be.

**Extended Insurance.**—This will be term insurance on the Insured's life. We will pay the amount of term insurance if the Insured dies in the term we describe below. Before the end of the term there will be cash values but no loan value.

The amount of term insurance will be (1) the face amount, plus (2) any dividend credits, minus (3) any contract debt.

The term is a period of time which will start on the due date of the premium in default. The length of the term will be that which is provided when we use the net cash value at the net single premium rate at the Insured's attained age.

Example. *Suppose the face amount of the contract is $12,000. On the day a premium is due, dividend credits are additions in the amount of $1,200, plus $530 more we are holding at interest. There is contract debt of $420. If the premium this is not paid at the end of its days of grace, the amount of term insurance will be $13,310. This comes from the $12,000 face amount, plus $1,730 in dividend credits ($1,200 in additions and $530 at interest), minus $420 of contract debt. The term insurance will last as long as the net cash value will provide it.*

(Continued on Next Page)

CONTRACT VALUE OPTIONS Continued

There may be extra days of grace. See "Grace Period."

## CONTRACT VALUE OPTIONS (Continued)

There may be extra days of term insurance. This will occur if the due date of the premium in default is before the tabular extended insurance first equals or exceeds 90 days, or the number of days for which premiums have been paid, if less. The number of extra days will be (1) 90, or the number of days for which premiums have been paid, if less, minus (2) the number of days of tabular extended insurance, if there is any. The extra days, if any, start on the day after the last day of term insurance provided by the net cash value, if any. If there is no such term insurance, they start on the due date of the premium in default. The term insurance for the extra days has no cash value. There will be no extra days if you replace the extended insurance with reduced paid-up insurance or you surrender the contract before the extra days start.

**Reduced Paid-up Insurance.**—This will be paid-up life insurance on the insured's life. We will pay the amount of this insurance when the insured dies. There will be cash values and loan values.

The amount of this insurance will be that which is provided when we use the net cash value at the net single premium rate at the insured's attained age.

**Computations.**—We will make all computations for either of these benefits as of the due date of the premium in default. But we will consider any dividend credits you surrender and any loan you take out or pay back in the days of grace of that premium.

**Automatic Benefit.**—When a premium is in default, the contract will stay in force as extended insurance. But it will stay in force as reduced paid-up insurance if either of these statements applies: (1) We issued the contract in a rating class for which we do not provide extended insurance; in this case the phrase No Extended Insurance is in the Rating Class on page 3. (2) The amount of reduced paid-up insurance would be at least as great as the amount of term insurance.

**Optional Benefit.**—You may choose to replace any extended insurance that has a cash value by reduced paid-up insurance. To make this choice, you must do so in writing to us and in a form which meets our needs, not more than three months after the due date of the premium in default. You must also send the contract to us to be endorsed.

**Cash Value Option.**—You may surrender this contract for its net cash value. To do so, you must ask us in writing and in a form which meets our needs. You must

also send the contract to us. Here is how we will compute the net cash value:

1. If all due premiums have been paid: The net cash value as of any date will be (a) the tabular cash value (which we explain under Tabular Values), plus (b) any dividend credits, minus (c) any contract debt.

2. If premium payment is in default three months or less: We will compute the net cash value as of the due date of the first unpaid premium. But we will adjust this value for any dividend credits you surrender and any loan you take out or pay back in the days of grace of that premium.

3. If premium payment is in default more than three months: The net cash value as of any date will be the net cash value on that date of any extended insurance benefit which would have been provided by that net cash value. Or it will be the net cash value on that date of any reduced paid-up insurance benefit including any dividend credits, less any contract debt.

However, within 30 days after an anniversary, the net cash value under 2 and 3 will not be less than it was on that anniversary. It will, of course, be adjusted for any dividend credits you surrender and any loan you take out or pay back in those 30 days.

*Example: Look back at the example we show for extended insurance. Suppose the tabular cash value is $2,676 and the net value of the additions is $800. The net cash value will be $3,585. This comes from: $2,676 tabular cash value, plus $1,330 in value of dividend credits ($800 in additions and $530 at interest), minus $420 of contract debt.*

We will usually pay any cash value promptly. But we have the right to postpone paying it for up to six months. If we do so for more than 30 days, we will pay interest at the rate of 3% a year.

**Tabular Values.**—The table on page 4 shows tabular values at the ends of contract years. These are the values if all due premiums have been paid, there is no contract debt, and there are no dividend credits.

For any extended insurance shown in the table, the term will be the number of years and days shown there. The amount of term insurance will be the face amount shown in the window of the first page.

If we need to compute tabular values at some time during a contract year, we will count the time since the start of the year and any premiums paid for the year. We will let you know the tabular values for other durations if you ask for them.

# LOANS

**Loan Requirements.**—After this contract has a tabular loan value (which we show in the table on page 4 and explain under "Tabular Values), you may borrow from us on the contract. All these conditions must be met:

1. The Insured is living.

2. The contract is in force other than as extended insurance.

3. The contract debt will not be more than the loan value. (We explain these phrases below.)

4. As sole security for the loan, you assign the contract to us in a form which meets our needs.

If there is already contract debt when you borrow from us, we will add the new amount you borrow to that debt.

**Contract Debt.**—Contract debt at any time means the loan on the contract, plus the interest we have charged which is not yet due and which we have not yet added to the loan.

Example 1: *Suppose the contract has a loan value of $6,000. A few months ago you borrowed $1,500. By now there is interest of $60 charged but not yet due. The contract debt is now $1,560, which is made up of the $1,500 loan and the $60 interest.*

**Loan Value.**—You may borrow, at any time, any amount up to the difference between the loan value and any existing contract debt at that time. On a premium due date, the loan value is the tabular loan value plus the net value of any dividend credits. At any other time, the loan value is the amount which would grow at interest to equal the loan value on the next premium due date.

There are two exceptions. The first is that, in the days of grace of a premium in default, the loan value is what it was on the due date of that premium. But we will subtract the net value of any dividend credits you surrender in those days of grace. The second is that, if the contract is in force as reduced paid-up insurance or has become paid-up, we use anniversaries and not premium due dates to find the loan value since there are no more of those due dates.

The tabular loan values on page 4 do not apply to reduced paid-up insurance. We use the loan value to which we refer in 3 under Cash Value Option.

Example 2: *Suppose, in example 1, you want to borrow all that you can. We will lend you $4,440 which is the difference between the $6,000 loan value and the $1,560 contract debt. This will increase the contract debt to $6,000. We will add the new amount borrowed to the existing loan and will charge interest on it, too.*

**Interest Charge.**—We will charge interest daily on any loan at the rate or rates shown under Loan Interest Rates.

Interest is due on each contract anniversary, or when the loan is paid back if that comes first. If interest is not paid when due, it will become part of the loan. Then we will start to charge interest on it, too.

Example 3: *Suppose the contract date is in 1981. Six months before the anniversary in 1990 you borrow $1,000 out of a $4,000 loan value. Assume we charge 8% a year.*

*Three months later, but still three months before the anniversary, we will have charged about $20 interest. This amount will be a few cents more or less than $20 since some months have more days than others. The interest will not be due until the anniversary unless the loan is paid back sooner. The loan will still be $1,000. The contract debt will be $1,020, since contract debt includes interest charged but not yet due.*

*On the anniversary in 1990 we will have charged about $40 interest. The interest will then be due.*

Example 4: *Suppose the $40 interest in example 3 was paid on the anniversary. The loan and contract debt each became $1,000 right after the payment.*

Example 5: *Suppose the $40 interest in example 3 was not paid on the anniversary. The interest became part of the loan, and we began to charge interest on it, too. The loan and contract debt each became $1,040.*

**Repayment.**—All or part of any contract debt may be paid back at any time while the Insured is living. But if there is contract debt at the end of the last day of grace of a premium in default, it may be paid back only if the contract is reinstated. When we settle the contract, any contract debt is due us. We will make an adjustment so that the proceeds will not include that debt.

**Excess Contract Debt.**—If contract debt ever grows to be equal to or more than the loan value, all the contract's benefits will end 31 days after we mail a notice to you and any assignee of whom we know. We may also send a notice to the Insured's last known address. In the notice we will state the amount which, if paid to us, will reduce the contract debt enough to keep the contract's benefits from ending for a limited time.

**Postponement of Loans.**—We will usually make a loan promptly. But we have the right to postpone making a loan for up to six months unless it will be used to pay premiums on this or other contracts with us.

**Payee Defined** ——

Printed in U S A

# SETTLEMENT OPTIONS

**Payee Defined.**—In these provisions and under the Automatic Mode of Settlement, the word Payee means a person who has a right to receive a settlement under the contract. Such a person may be the Insured, the owner, a beneficiary or a contingent payee.

**Choosing an Option.**—While the Insured is living you may choose, or change the choice of, an option for all or part of the proceeds which may arise from the Insured's death. The requirements are the same as those to designate or change a beneficiary. We describe them under Conditions.

A Payee may choose an option for all or part of any proceeds or residue which becomes payable to him or her in one sum. We explain residue under Residue Described.

In some cases, you or another Payee will need our consent to choose an option. We describe these cases under Conditions.

**Options Described.**—Here are the options we offer. We may also consent to other arrangements. As we use it in Options 2 and 5, the phrase regularly issued does not include contracts which are used to qualify for special Federal income tax treatment as a retirement plan.

**Option 1 (Instalments for a Fixed Period).**—We will make equal payments for up to 25 years based on the Option 1 Table. The payments will include interest at an effective rate of 3½% a year. We may credit more interest. If and while we do so, the payments will be larger.

**Option 2 (Life Income).**—We will make equal monthly payments for as long as the person on whose life the settlement is based lives, with payments certain for the period chosen. The choices are either ten years (10-Year Certain) or until the sum of the payments equals the amount put under this option (Instalment Refund).

The amount of each payment will be based on the Option 2 Table and the age and sex, on the due date of the first payment, of the person on whose life the settlement is based. But if a choice is made more than two years after the contract proceeds first become payable, we may use the Option 2 rates in Ordinary policies we regularly issue, based on United States currency, on the due date of the first payment. On request, we will quote the payment rates in policies we then issue. We must have proof of the date of birth of the person on whose life the settlement is based. The settlement will share in our surplus to the extent and in the way we decide.

**Option 3 (Interest Payment).**—We will hold an amount at interest. We will pay interest at an effective rate of at least 3% a year ($30.00 annually, $14.89 semi-annually, $7.42 quarterly or $2.47 monthly per $1,000). We may pay more interest.

**Option 4 (Instalments of a Fixed Amount).**—We will make equal annual, semi-annual, quarterly or monthly payments if they total at least $90 a year for each $1,000 put under this option. We will credit the unpaid balance with interest at an effective rate of at least 3½% a year. We may credit more interest. If we do so, the balance will be larger. The final payment will be any balance equal to or less than one payment.

**Option 5 (Non-Participating Life Income).**—We will make payments like those of an Option 2 annuity we then regularly issue which (1) is based on United States currency; (2) is bought by a single sum; (3) is not eligible for dividends; and (4) does not normally provide for value of any unpaid payments certain at the same interest rate we would use for that kind of annuity with the same provisions as to withdrawal. At least one of the persons on whose life the Option 5 is based must be a Payee. We must have proof of the date of birth of any person on whose life the option is based. Option 5 cannot be chosen more than 30 days before the due date of the first payment. On request, we will quote the payment which would apply for any amount placed under the option at that time.

**First Payment Due Date.**—Unless a different date is stated when the option is chosen: (1) the first payment for Option 3 will be due at the end of the chosen payment interval; and (2) the first payment for any of the other options will be due on the date the option takes effect.

**Residue Described.**—For Options 1 and 2, residue on any date means the then present value of any unpaid payments certain. We will compute it at an effective interest rate of 3½% a year. But we will use the rate we used to compute the actual Option 2 payments if they were not based on the table in this contract.

For Options 3 and 4, residue on any date means any unpaid balance with interest to that date. For Option 5, it means the then present value of any unpaid payments certain. We will compute it at the interest rate to which we refer in Option 5.

For Options 2 and 5, residue does not include the value of any payments which may become due after the certain period.

*(Continued on Next Page)*

# SETTLEMENT OPTIONS (Continued)

## OPTION 1 TABLE

### MINIMUM AMOUNT OF MONTHLY PAYMENT FOR EACH $1,000. THE FIRST PAYABLE IMMEDIATELY

| Number of Years | Monthly Payment |
|---|---|
| 1 | $84.65 |
| 2 | 43.05 |
| 3 | 29.19 |
| 4 | 22.27 |
| 5 | 18.12 |
| 6 | 15.35 |
| 7 | 13.38 |
| 8 | 11.90 |
| 9 | 10.75 |
| 10 | 9.83 |
| 11 | 9.09 |
| 12 | 8.46 |
| 13 | 7.94 |
| 14 | 7.49 |
| 15 | 7.10 |
| 16 | 6.76 |
| 17 | 6.47 |
| 18 | 6.20 |
| 19 | 5.97 |
| 20 | 5.75 |
| 21 | 5.56 |
| 22 | 5.39 |
| 23 | 5.24 |
| 24 | 5.09 |
| 25 | 4.96 |

Multiply the monthly amount by 2.989 for quarterly, 5.952 for semi-annual or 11.804 for annual.

## OPTION 2 TABLE

### MINIMUM AMOUNT OF MONTHLY PAYMENT FOR EACH $1,000. THE FIRST PAYABLE IMMEDIATELY

#### KIND OF LIFE INCOME

| AGE LAST BIRTHDAY | 10-Year Certain Male | Female | Instalment Refund Male | Female |
|---|---|---|---|---|
| 10 and under | $3.23 | $3.16 | $3.22 | $3.16 |
| 11 | 3.24 | 3.17 | 3.23 | 3.16 |
| 12 | 3.26 | 3.18 | 3.25 | 3.17 |
| 13 | 3.27 | 3.19 | 3.26 | 3.18 |
| 14 | 3.29 | 3.20 | 3.28 | 3.19 |
| 15 | 3.30 | 3.21 | 3.29 | 3.20 |
| 16 | 3.32 | 3.23 | 3.31 | 3.22 |
| 17 | 3.34 | 3.24 | 3.33 | 3.23 |
| 18 | 3.36 | 3.25 | 3.34 | 3.25 |
| 19 | 3.37 | 3.27 | 3.36 | 3.26 |
| 20 | 3.39 | 3.29 | 3.38 | 3.28 |
| 21 | 3.41 | 3.30 | 3.40 | 3.29 |
| 22 | 3.44 | 3.32 | 3.42 | 3.31 |
| 23 | 3.46 | 3.34 | 3.44 | 3.33 |
| 24 | 3.48 | 3.36 | 3.46 | 3.34 |
| 25 | 3.51 | 3.37 | 3.49 | 3.36 |
| 26 | 3.53 | 3.39 | 3.51 | 3.38 |
| 27 | 3.56 | 3.42 | 3.54 | 3.40 |
| 28 | 3.59 | 3.44 | 3.56 | 3.42 |
| 29 | 3.62 | 3.46 | 3.59 | 3.44 |
| 30 | 3.65 | 3.48 | 3.62 | 3.47 |
| 31 | 3.68 | 3.51 | 3.65 | 3.49 |
| 32 | 3.71 | 3.54 | 3.68 | 3.52 |
| 33 | 3.75 | 3.56 | 3.71 | 3.54 |
| 34 | 3.78 | 3.59 | 3.74 | 3.57 |
| 35 | 3.82 | 3.62 | 3.78 | 3.60 |
| 36 | 3.86 | 3.65 | 3.81 | 3.63 |
| 37 | 3.91 | 3.68 | 3.85 | 3.66 |
| 38 | 3.95 | 3.72 | 3.89 | 3.69 |
| 39 | 4.00 | 3.76 | 3.93 | 3.72 |
| 40 | 4.05 | 3.79 | 3.97 | 3.76 |
| 41 | 4.10 | 3.83 | 4.02 | 3.79 |
| 42 | 4.16 | 3.87 | 4.06 | 3.83 |
| 43 | 4.21 | 3.92 | 4.11 | 3.87 |
| 44 | 4.27 | 3.96 | 4.16 | 3.91 |
| 45 | $4.33 | $4.01 | $4.21 | $3.96 |
| 46 | 4.39 | 4.06 | 4.27 | 4.00 |
| 47 | 4.46 | 4.12 | 4.32 | 4.05 |
| 48 | 4.53 | 4.17 | 4.38 | 4.10 |
| 49 | 4.60 | 4.23 | 4.44 | 4.15 |
| 50 | 4.67 | 4.30 | 4.51 | 4.21 |
| 51 | 4.75 | 4.36 | 4.58 | 4.26 |
| 52 | 4.83 | 4.43 | 4.65 | 4.33 |
| 53 | 4.92 | 4.50 | 4.72 | 4.39 |
| 54 | 5.00 | 4.58 | 4.79 | 4.46 |
| 55 | 5.10 | 4.66 | 4.87 | 4.53 |
| 56 | 5.19 | 4.74 | 4.96 | 4.60 |
| 57 | 5.29 | 4.83 | 5.05 | 4.68 |
| 58 | 5.40 | 4.92 | 5.14 | 4.76 |
| 59 | 5.51 | 5.02 | 5.24 | 4.85 |
| 60 | 5.62 | 5.12 | 5.34 | 4.94 |
| 61 | 5.74 | 5.23 | 5.45 | 5.04 |
| 62 | 5.87 | 5.34 | 5.56 | 5.14 |
| 63 | 6.00 | 5.46 | 5.68 | 5.25 |
| 64 | 6.13 | 5.59 | 5.81 | 5.37 |
| 65 | 6.28 | 5.73 | 5.94 | 5.49 |
| 66 | 6.43 | 5.87 | 6.09 | 5.62 |
| 67 | 6.59 | 6.02 | 6.23 | 5.76 |
| 68 | 6.74 | 6.19 | 6.39 | 5.91 |
| 69 | 6.91 | 6.36 | 6.56 | 6.07 |
| 70 | 7.08 | 6.53 | 6.74 | 6.23 |
| 71 | 7.26 | 6.72 | 6.94 | 6.41 |
| 72 | 7.43 | 6.92 | 7.13 | 6.61 |
| 73 | 7.61 | 7.12 | 7.34 | 6.81 |
| 74 | 7.80 | 7.32 | 7.57 | 7.03 |
| 75 | 7.98 | 7.53 | 7.81 | 7.26 |
| 76 | 8.16 | 7.74 | 8.06 | 7.51 |
| 77 | 8.33 | 7.95 | 8.34 | 7.77 |
| 78 | 8.52 | 8.15 | 8.63 | 8.03 |
| 79 | 8.68 | 8.35 | 8.95 | 8.30 |
| 80 and over | 8.85 | 8.54 | 9.29 | 8.68 |

(Continued on Next Page)

SETTLEMENT OPTIONS (Continued)

## SETTLEMENT OPTIONS (Continued)

**Changing Options.**—A Payee under Option 1, 3 or 4 may choose another option for any sum which the Payee could withdraw on the date the chosen option is to start. That date may be before the date the Payee makes the choice only if we consent. In some cases, the Payee will need our consent to choose or change an option. We describe these cases next.

**Conditions.**—Our consent is needed for an option to be used for any person under any of these conditions:

1. The person is not a natural person who will be paid in his or her own right.

2. The person will be paid as assignee.

3. The amount to be held for the person under Option 3 is less than $1,000. But we will hold any amount for at least one year under the Automatic Mode of Settlement.

4. Each payment to the person under the option would be less than $20.

5. The option is for residue arising other than at (a) the Insured's death, or (b) the death of the beneficiary who was entitled to be paid as of the date of the Insured's death.

6. The option is for proceeds which arise other than from the Insured's death, and we are settling with an owner or any other person who is not the Insured.

**Death of Payee.**—If a Payee under an option dies and if no other distribution is shown, we will pay any residue under that option in one sum to the Payee's estate.

**Withdrawal of Residue.**—Unless otherwise stated when the option is chosen: (1) under Options 1, 2 and 5 the residue may be withdrawn; and (2) under Options 3 and 4, all, or any part not less than $100, of the residue may be withdrawn. If an Option 3 residue is reduced to less than $1,000, we have the right to pay it in one sum. Under Options 2 and 5, withdrawal of the residue will not affect any payments that may become due after the certain period; the value of those payments cannot be withdrawn. Instead, the payments will start again if they were based on the life of a person who lives past the certain period.

**Designating Contingent Payee(s).**—A Payee under an option has the right, unless otherwise stated, to name or change a contingent payee to receive any residue at that Payee's death. This may be done only if (1) the Payee has the full right to withdraw the residue; or (2) the residue would otherwise have been payable to that Payee's estate at death.

A Payee who has this right may choose, or change the choice of, an option for all or part of the residue. In some cases, the Payee will need our consent to choose or change an option. We describe these cases under Conditions.

Any request to exercise any of these rights must be in writing and in a form which meets our needs. It will take effect only when we file it at our Home Office. Then the interest of anyone who is being removed will end as of the date of the request, even if the Payee who made the request is not living when we file it.

## ENDORSEMENTS
(Only we can endorse this contract.)

# AUTOMATIC MODE OF SETTLEMENT

**Applicability.**—These provisions apply to proceeds arising from the Insured's death and payable in one sum to a Payee who is a beneficiary. They do not apply to any periodic payment.

**Interest on Proceeds.**—We will hold the proceeds at interest under Option 3. The Payee may withdraw the residue. We will pay it promptly on request. We will pay interest annually unless we agree to pay it more often. We have the right to pay the residue in one sum after one year if (1) the Payee is not a natural person who will be paid in his or her own right; (2) the Payee will be paid as assignee; or (3) the original amount we hold under Option 3 for the Payee is less than $1,000.

**Settlement at Payee's Death.**—If the Payee dies and leaves an Option 3 residue, we will honor any contingent payee provision then in effect. If there is none, here is what we will do. We will look to the beneficiary designation of the contract; we will see what other beneficiary(ies), if any, would have been entitled to the portion of the proceeds which produced the Option 3 residue if the Insured had not died until immediately after the Payee died. Then we will pay the residue in one sum to such other beneficiary(ies), according to that designation. But if, as stated in that designation, payment would be due the estate of someone else, we will instead pay the estate of the Payee.

*Example: Suppose the class 1 beneficiary is Jane and the class 2 beneficiaries are Paul and John. Jane was living when the Insured died. Jane later died without having chosen an option or naming someone other than Paul and John as a contingent payee. If Paul and John are living at Jane's death we owe them the residue. If only one of them is living then, and if the contract called for payment to the survivor of them, we owe him the residue. If neither of them is living then, we owe Jane's estate.*

**Spendthrift and Creditor.**—A beneficiary or contingent payee may not, at or after the Insured's death, assign, transfer or encumber any benefit payable. To the extent allowed by law, the benefits will not be subject to the claims of any creditor of any beneficiary or contingent payee.

## ENDORSEMENTS

(Only we can endorse this contract.)

**Voting Rights.**—We are a mutual life insurance company. Our principal office is in Newark, New Jersey, and we are incorporated in that State. By law, we have 24 directors. This includes 16 elected by our policyholders (four each year for four year terms), two of our officers, and six public directors named by New Jersey's Chief Justice.

The election is held on the first Tuesday in April from 10:00 A.M. to 2:00 P.M. in our office at the Secretary's address shown here. After this contract has been in force for one year, you may vote either in person or by mail. We will send you a ballot if you ask for one. Just write to our Secretary at Prudential Plaza, Newark, New Jersey 07101, at least 60 days before the election date. By law, your request must show your name, address, policy number and date of birth. If you are an individual, you must be at least 18 years old to vote.

**Home Office Locations.**—When we use the phrase Home Office we mean any of these Prudential offices:

Corporate Office, Newark, N.J.

| | |
|---|---|
| Central Atlantic Home Office, Fort Washington, Pa. | Northeastern Home Office, Boston, Mass. |
| Eastern Home Office, South Plainfield, N.J. | South-Central Home Office, Jacksonville, Fla. |
| Head Office, Canadian Operations, Toronto, Ont. | Southwestern Home Office, Houston, Tex. |
| Mid-America Home Office, Chicago, Ill. | Western Home Office, Los Angeles, Calif. |
| North Central Home Office, Minneapolis, Minn. | |

The Prudential Insurance Company of America,

By                                  Secretary

COMB 34693—79

RIDER FOR

Printed in U.S.A.

# RIDER FOR
## INSURED'S WAIVER OF PREMIUM BENEFIT

This Benefit is a part of this contract only if it is listed on the Contract Data page(s)

**Total Disability Benefit.**—We will waive contract premiums which fall due while the Insured is totally disabled. But this is subject to all the provisions of this Benefit and of the rest of this contract.

**Disability Defined.**—When we use the words disability and disabled in this Benefit we mean total disability and totally disabled. Here is how we define them: (1) until the Insured has stayed disabled for two years, we mean that he or she cannot, due to sickness or injury, do any of the duties of his or her regular occupation; but (2) after the Insured has stayed disabled for two years, we mean that he or she cannot, due to sickness or injury, do any gainful work for which he or she is reasonably fitted by education, training, or experience.

Except for what we state in the next sentence, we will at no time regard an Insured as disabled who is doing gainful work for which he or she is reasonably fitted by education, training, or experience. We will regard an Insured as disabled, even if working or able to work, if he or she incurs, during a period in which premiums are eligible to be waived as we describe below, one of these conditions: (1) permanent and complete blindness of both eyes; or (2) severance of both hands at or above the wrists or both feet at or above the ankles; or (3) severance of one hand at or above the wrist and one foot at or above the ankle.

**Premiums Eligible To Be Waived.**—If the Insured becomes disabled before the first contract anniversary after his or her 60th birthday and that disability begins (1) on or after the first contract anniversary after his or her 5th birthday, if the contract date was before that birthday; or (2) on or after the contract date, if that date was on or after his or her 5th birthday, we will waive all premiums which fall due while he or she stays disabled.

If the Insured becomes disabled on or after the first contract anniversary after his or her 60th birthday, we will waive only those premiums which fall due before the first contract anniversary after his or her 65th birthday and while he or she stays disabled.

If the Insured becomes disabled on or after the first anniversary after his or her 65th birthday, we will not waive any premium which falls due in that period of disability.

**Conditions.**—Both of these conditions must be met: (1) The Insured must become disabled while this contract is in force with no premium in default past its days of grace. (2) The Insured must have stayed disabled for a period of at least six months while living.

**Exceptions.**—We will not waive any premium if the Insured becomes disabled from: (1) an injury he causes to himself, or she causes to herself, on purpose; or (2) sickness or injury due to service on or after the contract date in the armed forces of any country(ies) at war. The word war means declared or undeclared war and includes resistance to armed aggression.

**Successive Disabilities.**—Here is what happens if the Insured has at least one premium waived while disabled, then gets well so that premium payment resumes, and then becomes disabled again. In this case, we will ignore the six-month period which would otherwise be required by Condition (2) and consider the second period of disability to be part of the first period unless (1) the Insured has done gainful work, for which he or she is reasonably fitted, for at least six months between the periods; or (2) the Insured became disabled the second time from an entirely different cause.

If we ignore the six-month period required by Condition (2), we also will not count the days when there was no disability as part of the two year period when disability means the Insured cannot work at his or her regular occupation.

**Notice and Proof of Claim.**—Notice and proof of any claim must be given to us while the Insured is living and disabled, or as soon as reasonably possible. If notice or proof is not given as soon as reasonably possible, we will not waive any premium due more than one year before the date that notice or proof is given to us. We may require proof at reasonable times that the Insured is still disabled. After he or she has been disabled for two years, we will not ask for proof more than once a year. As a part of any proof, we may require that the Insured be examined at our expense by doctors of our choice.

**Recovery from Disability.**—We will stop waiving premiums if (1) disability ends; or (2) we ask for proof that the Insured is disabled and we do not receive it; or

(Continued on Next Page)

EG 100 R

Printed in U.S.A.

(Continued from Preceding Page)

(3) we require that the Insured be examined and he or she fails to do so.

**Miscellaneous.**—Any premiums which fall due are payable until we approve a claim. We will refund any premium paid which is later waived. There might be unpaid premiums which fall due (1) after disability starts; but (2) more than one year before we have notice of claim at our Home Office. Or disability might start in the days of grace of a premium which is unpaid. In either case, if we are otherwise able to approve a claim, those unpaid premiums which we do not waive will be due us with compound interest at 6% a year. If we do not receive them, we will deduct them with interest from any amount which we pay under the contract.

Any premium we waive will be at the frequency in effect when the Insured becomes disabled.

If we waive premiums, the effect on this contract will be the same as if the premiums had been paid in cash. But the Premium Adjustment provision in the contract will not apply to any premium we waive under this Benefit.

If we owe the Insured a refund of premium but have not paid it before his or her death, we have the choice of paying the beneficiary for insurance payable upon the death of the Insured or the Insured's estate.

**Benefit Premiums.**—The premiums for this Benefit are a part of the contract premiums due before the first contract anniversary after the Insured's 65th birthday.

**Termination.**—This Benefit will end on the earliest of:

1. the end of the last day of grace of a premium in default; it will not continue if a benefit takes effect under any contract value options provision which may be in the contract;

2. the end of the day which is the last premium due date in the premium period;

3. the date the contract is surrendered under its Cash Value Option, if it has one;

4. the end of the day before the first contract anniversary after the Insured's 65th birthday, unless the Insured has stayed disabled since before the first contract anniversary after the 60th birthday; and

5. the date the contract ends for any other reason.

**This Supplementary Benefit rider attached to this contract on the Contract Date**

The Prudential Insurance Company of America.

By *[signature]*

Secretary

**Prudential** The Prudential Insurance Company of America

1a. Proposed Insured's name — first, initial, last. Print:
Terle H. Wentz

1b. Sex ☒ M ☐ F

2a. Date of birth  2b. Age  2c. Place of birth
Mo. 5 / Day 18 / Yr. 34   I M D

4. Address for mail No. Box 212   Street   City Wabash   State IND   Zip 46992

5a. Occupations Extra Ministry Co.   5b. For how long? 21 yes

6. If spouse is proposed for coverage, give:
First name & Relationship   Date of birth Mo./Day/Yr. ins. in force   Amt. of life

a. Name Mr. Palmer
b. Date of birth Ic. Age Id. Place of birth

7. For each child proposed for coverage, give:
First name & Relationship   Date of birth Mo./Day/Yr. ins. in force   Amt. of life

| | a. | | |
| | b. | | |
| | c. | | |
| | d. | | |
| | e. | | |
| | f. | | |
| | g. | | |

8a. Kind of policy Economatic L   8b. Initial amount $ 100,000

9. Rating if not Standard

10. Accidental death coverage
a. Initial amt. $ 100,000
b. Rating ☐ 2 ☐ 3 ☐ 4 ☐ 5

Insurance for a child will not start until the 15th day of life.

3. ☐ Single ☐ Separated ☒ Married ☐ Divorced ☐ Widowed

11. To apply for any of these Supplementary Benefits, give details:
a. ___ Year Decreasing Term on Insured $
b. ___ Year Decreasing Term on Spouse $
c. Decreasing Term to Age 65M/66F on Insured $
d. Decreasing Term to Age 62M/65F on Spouse $
e. ___ Year Level Term on Insured $
f. Family Income to ___th Contract Anniversary on Insured $
g. Family Income to 20th Contract Anniversary on Insured $
h. Family Income to Age 65M/66F on Insured $
i. Level Term on Dependent Children $

☐ Level Premium
☐ Mod. Premium
___ Initial Amount. ___ per month.
___ Initial Amount. ___ per month.
j. Option to Purchase Additional Insurance $ ___ per month.

12. Beneficiary: Name John Wentz Sons   Relationship Partnership

(For insurance payable upon death of (1) the Insured, and (2) an insured child after the death of the Insured if there is no insured spouse.)

13. State any special request.

14. List all life insurance, annuities and variable contracts on proposed Insured. (If NONE, so state.)

| Company | Initial amt. | Year Issued | Kind (life, Group) |
| --- | --- | --- | --- |
| Metropolitan | 100,000 | 1964 | O R D |
| North western | 100,000 | 1972 | O R D |

(Do not complete for a Family Policy.)
Age ___

|  | Yes | No | Medical Yes No |
| --- | --- | --- | --- |
| 15. Will this insurance replace or change any existing insurance or annuity in any company on any person named in 1a, 6 or 7? If "Yes", give their names, name of company, plan, amount and policy numbers. | | ☒ | |
| 16. Is anyone applying for, or trying to reinstate, life or health insurance on any person named in 1a, 6 or 7 in this or any company? If "Yes", give amount, details and company. | | ☒ | |
| 17. Does any person named in 1a, 6 or 7 plan to live or travel outside the United States and Canada within the next 12 months? If "Yes", give details. | | ☒ | |
| 18. Does any person named in 1a, 6 or 7 plan to fly an aircraft, glider, balloon or like device or within the last 2 years, has any such person flown as a student pilot, pilot or crew member or had any other duties aboard an aircraft, glider, balloon or like device while in flight (including flight pay)?. If "Yes", complete Aviation Questionnaire. | | ☒ | |
| 19. Has any person named in 1a or 6, within the last 12 months: | | | |
| a. been treated by a doctor for or had a known heart attack, stroke or cancer other than of the skin? | | ☒ | |
| b. had an electrocardiogram for chest pain or for any other physical complaint, or taken medication for high blood pressure?. | | ☒ | |
| 20. Premiums payable ☐ Ann. ☐ Semi-Ann. | | | |

15. Will this insurance replace or change any existing insurance or annuity in any company on any person named in 1a, 6 or 7? If "Yes", give their names, name of company, plan, amount and policy numbers. ..... Yes ☐ No ☒

16. Is anyone applying for or trying to reinstate, life or health insurance on any person named in 1a, 6 or on any company? If "Yes", give amount, details and company. .... Yes ☐ No ☒

17. Does any person named in 1a, 6 or 7 plan to live or travel outside the United States and Canada within the next 12 months? If "Yes", give details. ..... Yes ☐ No ☒

18. Does any person named in 1a, 6 or 7 plan to fly an aircraft (pilot, balloon or like device or within the last 2 years, has any such person flown as a student pilot, pilot or crew member or had any other duties aboard an aircraft, glider, balloon or like device while in flight (including flight for flight pay)?. .... Yes ☐ No ☒
If "Yes", complete Aviation Questionnaire.

19. Has any person named in 1a, 6 or 7, within the last 12 months:
  a. been treated by a doctor for or had a known heart attack, stroke or cancer other than of the skin?. .... Yes ☐ No ☒
  b. had an electrocardiogram for chest pain or for any other physical complaint, or taken medication for high blood pressure?. ..... Yes ☐ No ☒

20. Premiums payable ☐ Ann. ☐ Semi-Ann. ☐ Quar. ☒ Mon. ☐ Pay. Budg. ☐ Pru-Matic ☐ Gov't. Allot.

21. Amount paid $ 155 ☐ None (Must be "None" if either 19a or 19b is answered "Yes").

22. Is it understood that a medical examination will be made on any person named in 1a, 6 or 7? If "Yes", on whom? .... Yes ☒ No ☐

23. If 22 is "Yes", is it agreed that no insurance will take effect on anyone until all medical examinations are made, even though 21 shows that an amount has been paid? ..... Yes ☒ No ☐

24. Change made by Home Office ....

WITH ECONOMATIC DIVIDEND OPTION.

The proposed Insured declares that, to the best of his or her knowledge and belief, the above statements are complete and true. When Prudential gives a Temporary Insurance Agreement, ORD 22387-80, of the same date as this Part 1, coverage will start as shown in that form. Otherwise, no coverage will start unless: (1) a contract is issued, (2) it is accepted, and (3) the full first premium is paid while all persons to be covered are living and their health remains as stated in Parts 1 and 2. If all these take place, coverage will start on the contract date. Any entry in 24 made at a Home Office will be approved by acceptance of the contract. But where the law requires written consent for any change in the application, such a change can be made only if those who sign this form approve the change in writing. No agent can make or change a contract, or waive any of Prudential's rights or needs.

OWNERSHIP: Unless otherwise asked for above, the owner of the contract will be (1) the applicant if other than the proposed Insured, otherwise (2) the proposed Insured. But this is subject to any automatic transfer of ownership stated in the contract.

Application made at _Fort Wayne_ State _Ind_

Date _Oct._ ___, 19 82

Witnessed by Licensed Agent (Writing Representative)
Signature _____

Signature of Proposed Insured _____

Signature of Applicant (if other than proposed Insured) _____
(If applicant is a firm or corporation, insert name of company)

By _____
(Signature and title of officer signing for firm or corporation)

ORD 34340-80

1. What is the height and weight of:
   a. Proposed Insured? Ht. ___ / ___ Wt. ___ b. Spouse? (if to be covered) Ht. ___ Wt. ___
   Has either weight changed more than 10 pounds in the past year?
   If "Yes", whose weight changed?

   |  | Gain | Loss |
   |---|---|---|
   |  | lbs. | lbs. |

   | | How long has the present weight been the same? | | Yes | No |
   Reason for change.

2. Has the proposed insured or spouse (if to be covered) ever smoked?

   | | | Cigarettes | Cigars | Pipe | Yes | No |
   |---|---|---|---|---|---|---|
   | Proposed Insured | ☑ Yes ☐ No | Mo. | Yr. | Mo. | Yr. | Mo. | Yr. |
   If "Yes", give date(s) last smoked: | Spouse ☐ Yes ☐ No | | | | |
   Proposed Insured | Mo. | Yr. | | |
   Spouse | Mo. | Yr. | | |

3. When was a doctor last consulted by:
   a. Proposed Insured? Mo. 9 Yr. 82 b. Spouse? (if to be covered) Mo. ___ Yr. ___
   (Give details in 8.)

4. Is any person to be covered now being treated or taking medicine for any condition or disease? Yes ☐ No ☑

5. Has any person to be covered ever:
   a. had any surgery or been advised to have surgery and has not done so? ......................... Yes ☑ No ☐
   b. been in a hospital, sanitarium or other institution for observation, rest, diagnosis or treatment? ... Yes ☑ No ☐
   c. regularly used or is any such person now using, barbiturates or amphetamines, marijuana or other hallucinatory drugs, or heroin, opiates or other narcotics, except as prescribed by a doctor? ... Yes ☐ No ☑
   d. been treated or counseled for alcoholism? .............................................. Yes ☐ No ☑
   e. had life or health insurance declined, postponed, changed, rated-up or withdrawn? ............. Yes ☐ No ☑
   f. had life or health insurance canceled, or its renewal or reinstatement refused? ............... Yes ☐ No ☑

6. Other than as shown above, in the past 5 years has any person to be covered:
   a. consulted or been attended or examined by any doctor or other practitioner? ................. Yes ☑ No ☐
   b. had electrocardiograms, X-rays for diagnosis or treatment, or blood, urine, or other medical tests? (If "Yes", state dates, why made and by whom.) ........................................ Yes ☐ No ☑
   c. made claim for or received benefits, compensation, or a pension because of sickness or injury? .. Yes ☐ No ☑

7. Does any person to be covered now have a known sign of any physical disorder, disease or defect not shown above? ................................................................................ Yes ☐ No ☑

8. What are the full details of the answer to 3 and to each part of 4 through 7 which is answered "Yes"?

   | Name & Question No. | Illness or other reason. If operated, so state. Reason for any check up, doctor's advice, treatment and medication. | Time lost from normal activities | Began Mo. Yr. | Full recovery Mo. Yr. | PRINT full names and addresses of doctors and hospitals |
   |---|---|---|---|---|---|

I declare that, to the best of my knowledge and belief, the above statements are complete and true with respect to all persons proposed for coverage.

(Be sure you have read all the questions and answers before signing.)

6. Other than as shown above, in the past 5 years has any person to be covered:
   a. consulted or been attended or examined by any doctor or other practitioner?
   b. had electrocardiograms, X-rays for diagnosis or treatment, or blood, urine, or other medical tests? (If "Yes", state dates, why made and by whom.)
   c. made claim for or received benefits, compensation, or a pension because of sickness or defect not injury?

7. Does any person to be covered now have a known sign of any physical disorder, disease or defect not shown above?

8. What are the full details of the answer to 3 and to each part of 4 through 7 which is answered "Yes"?

| Name & Question No. | Illness or other reason. If operated, so state. Reason for any check up, doctor's advice, treatment and medication. | Time lost from normal activities Mo. Yr. | Full recovery Mo. Yr. | PRINT full names and addresses of doctors and hospitals |
|---|---|---|---|---|

7 & 8 Received medication from Cramer, M.D. Doctor city
R.M. Ferguson, Bryan, Ohio

3. Cold

I declare that, to the best of my knowledge and belief, the above statements are complete and true with respect to all persons proposed for coverage.

(Be sure you have read all the questions and answers before signing.)

Date _____ 19 8 2

Signature of Proposed Insured

I certify that I asked the proposed Insured each of the above questions, that I truly wrote down the answers he or she gave me, and I saw him or her sign this Part 2.

District or Agency _____

Licensed Agent (Writing Representative)

Signature _____

ORD 34341-75

# ENDORSEMENTS

Only we can endorse this contract.

# BASIS OF COMPUTATION

**Mortality Tables Described.**—We base all net premiums and net values to which we refer in this contract on the Insured's attained age and sex. For extended insurance we use the Commissioners 1958 Extended Term Insurance Table. For all other of those net premiums and net values, we use the Commissioners 1958 Standard Ordinary Mortality Table. If the Insured is female and at least age 15, we set the tables back 3 years. If she is younger, we use the female extensions of the tables for ages less than 15. We use continuous functions based on age last birthday.

**Interest Rates.**—For dividend additions we use 4% a year for the net premiums and net values. For all other net premiums and net values to which we refer in this contract we use 5½% a year.

**Exclusions.**—When we compute net values we exclude the value of any Supplementary Benefits and any other extra benefits added by rider to this contract.

**Values.**—Tabular cash values will be equal to the minimum cash value we compute in accord with the Standard Non-forfeiture Value Method and using the mortality tables and interest rate which we describe above. There will be the same exclusions.

**Minimum Legal Values.**—The cash, loan and other values in this contract are at least as large as those required by law where it is delivered. We have given the insurance regulator there a detailed statement of how we compute values and benefits.

# CONTRACT SUMMARY (Continued from Page 2)

## TABLE OF BASIC AMOUNTS

| When the proceeds arise from the Insured's death: | And The Contract Is In Force: | Then The Basic Amount Is: | And We Adjust The Basic Amount For: |
|---|---|---|---|
| | with no premium in default past its days of grace | the face amount (in window on page 11, plus the amount of any extra benefit arising from the Insured's death | contract debt (see page 10), dividend credits (see page 8), and premium in default or paid (other than by a waiver benefit, if any) past the date of death (see page 7). |
| | as reduced paid-up insurance (see page 9) | the amount of reduced paid-up insurance (see page 9) | contract debt and dividend credits since the reduced paid-up insurance began. |
| | as extended insurance (see page 8) | the amount of term insurance, if the Insured dies in the term (see page 8); otherwise zero | nothing. |

Page 15 (EL—82)

COPY OF FORM(S) COMP. 17429 ATTACHED

Filed: 8/20/2018 8:57 AM
Clerk
Allen County, Indiana
JA

## Prudential

EG 100 R

**REQUEST FOR CHANGE OF POLICY NUMBERED**

\*Include D or M if part of Policy Number

| * | 7 6 | 2 0 3 | 9 3 4 |

Date Requested  1 - 7 , 19 83

Control No.

The Prudential Insurance Company of America is requested to change the above numbered policy, in which

_Jerre_ _____ _Wendt_
First Name    Initial    Last Name

is designated as the INSURED, as follows:

| | | Prem. Payable | Policy Kind | Rider Kind | Initial Amount |
|---|---|---|---|---|---|
| FROM | Policy Date 11-11-82 | ☐ Annually ☐ Semi-Ann. ☐ Quarterly ☒ Mly. (Reg. Ord.) ☐ Mly. (Deb. Ord.) ☐ Weekly | Conservation U.L. | (1) | |
| | Insuring Age M-39 | | Policy Amount 100,000 | (2) | |
| | | | Supp. Benefits | (3) | |
| | | | | (4) | |
| TO | Policy Date 11-11-82 | ☐ Annually ☐ Semi-Ann. ☐ Quarterly ☒ Mly. (Reg. Ord.) ☐ Mly. (Deb. Ord.) ☐ Weekly | Policy Kind Survivor Life 80 | (1) | |
| | Insuring Age M-39 | | Policy Amount 100,000 | (2) | |
| | | | Supp. Benefits | (3) | |
| | | | | (4) | |

In which _____ will be designated as the INSURED

| TO | Policy Date | Prem. Payable ☐ Annually ☐ Semi-Ann. ☐ Quarterly | Policy Kind | Rider Kind | Initial Amount |
|---|---|---|---|---|---|
| | Insuring Age | | Policy Amount | (1) | |
| | | | Supp. Benefits | (2) | |
| | | | | (3) | |

In which _____ will be designated as the INSURED

| TO | Policy Date | Prem. Payable | Policy Kind | Rider Kind | Initial Amount |
|---|---|---|---|---|---|
| | Insuring Age | | Policy Amount | (1) | |
| | | | Supp. Benefits | (2) | |

In which _____ will be designated as the INSURED

**OPEN SPACE** — Use Only For Changes That Cannot Be Described Above.

The undersigned agree(s) (1) that if the requested change requires surrender of the original policy to Prudential, the policy is hereby surrendered for cancellation; (2) that any indebtedness against the original policy shall, unless liquidated, be transferred ...

Printed in U.S.A.

EXHIBIT B

| | | | | will be designated as the INSURED | |
|---|---|---|---|---|---|

| | | Policy Date | Prem. Payable | Policy Kind | Policy Amount | Supp. Benefits | Rider Kind | Initial Amount |
|---|---|---|---|---|---|---|---|---|

in which.......................

**A N D T O**

Insuring Age

In which..........................will be designated as the INSURED

| Policy Date | Prem. Payable | Policy Kind | Policy Amount | Supp. Benefits | Rider Kind | Initial Amount |
|---|---|---|---|---|---|---|

**A N D T O**

Insuring Age

In which.................................will be designated as the INSURED

**OPEN SPACE**
Use Only
For Changes
That Cannot
Be Described
Above.

The undersigned agree(s): (1) that if the requested change requires surrender of the original policy to Prudential, the policy is hereby surrendered for cancellation; (2) that any indebtedness against the original policy shall, unless liquidated, be transferred to the new policy(ies); and (3), that this Request for Change may be made part of the new policy(ies) if Prudential so elects. Each person executing this form represents to Prudential that he (she) is of legal age under the laws of the place in which he (she) resides, or that he (she) is empowered by law to execute this form even though not of legal age.

Signature of Spouse or Beneficiary (if required)

X _____
Signature of Insured

X _____
Signature of Owner if other than Insured

COMB 17429—74   PART 1

**Declaration Supplementary to Request to the Prudential Insurance Company of America for Change of Policy Numbered** _____is designated as the INSURED

**\*** Include D or M if part of Policy Number

in which...........................

The Insured, or the Owner of the policy if the Insured is under age 15, declares that to the best of his (her) knowledge and belief no person covered under the above numbered policy has any impairment of sight or hearing, has any known indication of a physical or mental disorder, defect or abnormality, or is receiving care or treatment by any physician or other practitioner.

(IF THIS DECLARATION CANNOT BE MADE, COMPLETE PART 4 ON REVERSE)

The undersigned agree(s) that, if Prudential approves the Request for Change, including this Supplementary Declaration, may be made part of the new policy(ies) and, if so made, it shall be a condition of the change that if this Declaration involves a material misrepresentation, Prudential's liability during the period following the date of the Request equal to the period stated in the Incontestability provision of the new policy(ies) shall be limited to the liability which would exist if the above numbered policy had remained in force and unchanged.

Date  /-7-19 83

X _____
Signature of Insured if age 15 or over

X _____
Signature of Owner if other than Insured

COMB 17429—74   PART 2

Filed: 8/20/2018 8:57 AM
Clerk
Allen County, Indiana
JA

02D02-1808-PL-000288
Allen Superior Court 2

PAGE   1   of   3



## Prudential

# Your Policy Values

JERE A WENDT
BOX 666
1322 GARFIELD ST
WABASH IN 46992-2509

INDYG 808 C

**Quotation Date**
February 28, 2014

**Policy Number**
76 203 934

**Policyowner's Name**
JERE A WENDT

**Insured's Name**
JERE A WENDT

**Policy Type**
Whole Life

**Policy Status**
Extended Term

**Policy Date**
November 11, 1982

**Other Benefits**
Living Needs Benefit

Thank you for your recent request for the values and benefits of your Whole Life policy. The calculation date of the values shown below was **February 27, 2014**. To assist you in your review of this quotation, a list of terms and definitions is provided on the back of this page.

### Your Life Insurance Coverage Profile

| | |
|---|---|
| Extended Term Insurance | $ 142,593.79 |
| Termination Dividend | $ 0.00 |

Term insurance is being provided under the Extended Insurance benefit described in your policy, and will continue through May 19, 2017.

### Your Policy Values

| | | |
|---|---|---|
| Cash Value | $ | 29,290.19 |
| Termination Dividend | + | 0.00 |
| **Total Cash Value** | $ | 29,290.19 |

The cash value of the term insurance portion of this amount will decrease over time and does not have loan value.

**Your Prudential Agent**
FAITH L NEHER, LUTCF
(574) 267-8634

**Your Customer Service Office**
(800) 778-2255

**Address**
Customer Service Office
PO Box 7390
Philadelphia, PA 19176

**Visit Our Web Site**
www.prudential.com

C 94601 IH2
INDYG 808

EXHIBIT C

 **Prudential**

## Your Beneficiary Information

Please see your beneficiary designation form for more details.

## Important Notice

According to our files, your policy has a collateral assignment. This quotation does not reflect that assignment.

Collateral Assignee Name:
NBD BANK NA

This quotation provides a brief summary of your values and benefits, which your Prudential Agent would be happy to explain to you in more detail. If you do not have a Prudential Agent, a customer service representative can be reached at (800) 778-2255 Monday through Friday, from 8:00 a.m. to 8:00 p.m., Eastern Time to answer questions.

02D02-1808-PL-000288
Allen Superior Court 2

0004510117010000



**Prudential**

Customer Service Office
P.O. Box 13902
Philadelphia, PA 19176
www.prudential.com

12626166.1 000651

John Wendt And Sons
1322 Garfield St
Wabash, IN 46992

Insured: Jere A. Wendt
Policy Number: 76203934

October 25, 2016

Dear John Wendt And Sons:

Thank you for taking the time to notify us of the death of Jere A. Wendt. Here is the information you requested about the policy that insured Jere A. Wendt.

When the application for life insurance was taken out, it indicated a date of birth of 05/18/1943 for Jere A. Wendt. When the claim was initiated, it was discovered that his actual date of birth was 11/02/1941.

Prior to the age adjustment, based on a date of birth of 05/18/1943, when premiums were not paid under the terms of policy number 76203934, the cash value of the policy was used to purchase extended term insurance coverage which provided a death benefit for a limited time. This would have provided extended term insurance through 05/19/2017. However, based on his correct date of birth of 11/02/1942, the extended term insurance expired as of 10/31/2015. As a result, no death benefit is payable.

If you have any questions or would like more information, please call our customer service office at (800) 496-1035 and refer to reference number AGN63H8P. We are available Monday through Friday between 8:00 a.m. and 8:00 p.m. Eastern time. If you are using a telecommunications device for the hearing impaired, please call (800) 778-8633, Monday through Friday between 8:00 a.m. and 6:00 p.m. Eastern time. One of our customer service representatives will be glad to help you.

Sincerely,

*Melissa Carlson*

Melissa Carlson
Customer Service Representative

cc: Matthew D. Shull

Life insurance is issued by The Prudential Insurance Company of America, Pruco Life Insurance Company (except in NY and/or NJ), or Pruco Life Insurance Company of New Jersey (in NY and/or NJ).

Page 1 of 1

EXHIBIT D